James G. Schmidt and Lorraine W. Schmidt v. Commissioner.
Schmidt v. Commissioner
Docket No. 982-66
United States Tax Court
T.C. Memo 1967-195; 1967 Tax Ct. Memo LEXIS 65; 26 T.C.M. (CCH) 952; T.C.M. (RIA) 67195; October 10, 1967
Elroy J. Snouffer, 1201 N. Calvert, Baltimore, Md., for the petitioners. Robert E. Garfield, for the respondent. KERN Memorandum Opinion KERN, Judge: Respondent *66 determined a deficiency in the income tax liability of petitioner for the year 1961 in the amount of $11,776.50. The adjustments giving rise to this deficiency were explained by respondent as follows: It is determined that you failed to report dividends received from the Paul M. Adams Company in the amount of $22,450.00. It is also determined that you received taxable dividends of $480.00 from the Paul M. Adams Company, representing the value of personal use of a company automobile. Therefore, taxable income is increased by $22,930.00. Only that part of the deficiency attributable to respondent's determination with regard to the alleged dividend of $22,450.00 is here in issue. All of the facts upon which the case is submitted have been stipulated by the parties. That stipulation and three of the exhibits attached thereto read as follows: 1. Petitioners are husband and wife who reside at 28 Bouton Green, Baltimore, Maryland. For the year involved a joint income tax return was filed by petitioners with the District Director of Internal Revenue, Baltimore, Maryland. (The term petitioner as hereinafter used refers tojames G. Schmidt.) 2. Petitioner is the president of the Paul *67 M. Adams Company. Petitioner, over a period of years through 1957, deposited checks in his personal accounts drawn by the Paul M. Adams Company to pay vendors in the total amount of $22,454.40. 3. Petitioner was criminally prosecuted for willfully attempting to evade and defeat income tax for the years 1954, 1955 and 1956. 4. Mr. Schmidt pleaded guilty to two counts of a six-count indictment. Mr. Schmidt was sentenced to a concurrent sentence of six months in jail on each guilty count and a fine of $2,500.00 for each count was levied by the court. 5. For the prosecution years the fraud was accomplished by altering retained copies of purchase invoices and by issuing duplicate corporate checks in payment thereof, which checks had the endorsement of the vendor typed in and were then deposited in the bank account of Mr. Schmidt or otherwise diverted to his personal benefit. 6. It was determined at the time of the criminal indictment that petitioner had diverted $22,454.40 from the corporation for his own personal benefit. Accordingly, this amount was added to his income for the years in question, and he paid the proper tax thereon. 7. During the year 1958, prior to the criminal *68 prosecution, Mr. Schmidt reimbursed the corporation $22,454.40. This is the exact amount that the Internal Revenue Service taxed to Mr. Schmidt during the years for which he was criminally prosecuted. 8. The Paul M. Adams Company and petitioner's brother, H. Norbert Schmidt, now deceased, agreed that the situation of petitioner required alleviation. Petitioner no longer had the money in 1961, but he had paid the income taxes. 9. The directors of the Paul M. Adams Company declared a dividend in 1961 stating: "It being the purpose of this resolution to accept and ratify all actions with respect to those years". 10. On March 2, 1961, the Paul M. Adams Company adopted a resolution to give a dividend to Mr. Schmidt in the amount of $22,454.00. A copy of the declaration of the dividend from the minute book of the Paul M. Adams Company is attached hereto. This exhibit reads as follows: THE PAUL M. ADAMS COMPANY March 2, 1961 Meeting of the Board of Directors of The Paul M. Adams Company was held this day at the offices of the Corporation. The following resolutions were made and passed: A dividend representing 10% of all outstanding stock of 721 shares shall be paid in Cash *69 to all stockholders. The total amount of the dividend declared is $7210.00. That the outstanding services of James G. Schmidt to the Paul M. Adams Company be recognized by the declaration in the amount of $22,454.00. Said dividend being a charge against surplus of the Corporation in accordance with the findings of the Internal Revenue Service and is specifically designated as having been paid in those years as determined by the Internal Revenue Service. It being the purpose of this resolution to accept and ratify all actions with respect to those years. No further business, meeting adjourned. (signed) H. Norbert Schmidt Secretary 11. The dividend declaration was treated on the corporate books as follows: A journal entry was made to debit surplus $22,450.00 and credit loans payable $22,450.00. This exhibit reads as follows: March 2, 1967 As Secretary of The Paul M. Adams Company, I hereby certify that the General Journal - Page 159 contains the following entry dated April 28, 1961. Surplus
$22,450.00
J.G.S. Loan Account
$22,450.00
Marie M. Vohrer, Secretary 12. As of March 2, 1961, Mr. Schmidt personally owed the corporation $9,010.73. After *70 the entry debiting surplus, the balance in the loan payable account was $13,439.27. This was the amount that was due the taxpayer by the Paul M. Adams Company after credit was given for the $9,010.73. The balance of this account was paid by a check drawn in June 1961, in the amount of $5,543.27 and another check drawn in November, 1961, in the amount of $7,896.00. These two checks together with the cancellation of Mr. Schmidt's indebtedness of $9,010.73 equals the total amount of $22,450.00 dividend declaration. Exhibit 3-C reads as follows: LEDGER
Name LOAN ACCOUNT
Address J.G.S
City
Term
Credit Limit
Rating
Folio
Charges
Credits
Balance
Date
Balance Forward
Nov. 30, 57
2.01
1,242.39
Nov. 30, 57
2.01
7,768.34
9,010.73
Oct. 31, 58
.52
22,454.00
13,443.67
Dec. 31, 58
1.01
22,454.40
9,010.73
Apr. 28, 61
1,59
22,450.00
13,439.27
Jun. 30, 61
1.01
5,543.27
7,896.00
Nov. 30, 61
2.73
7,896.00
.00
13. The deficiency as determined by the Commissioner is in income taxes for the year 1961 in the amount of $11,776.50 attributable to the dividend of $22,450.00. [1] Attached hereto is petitioner's *71 1961 income tax return which does not reflect the receipt of the $22,450.00 from the Paul M. Adams Company. (Exhibit 4-D.) Before we discuss the arguments of the parties hereto advanced on briefs we point out that the only facts which we may consider are those contained in the stipulation and attached exhibits. We do this because petitioner in his argument makes certain factual statements which are not supported by the stipulation. For example the second paragraph of petitioner's "Argument" in his original brief reads as follows: When James G. Schmidt paid the money in [to the Paul M. Adams Company] it was credited to purchases and found its way into surplus as a reduction of the cost of goods sold. The corporation sought to square its accounts with Internal Revenue Service in this manner, but Internal Revenue Service refused to permit this approach. Instead the corporation paid deficiencies for the years when its purchases were overstated *72 and filed claim for refund for the year 1958 when it overpaid its taxes by understating cost of goods according to the determination of Internal Revenue Service. As a result the corporation did not receive the benefit of a deduction because the improperly withdrawn sums were held to be a dividend distribution to James G. Schmidt. Later in the same brief and to the same effect the statement is made that "The corporation made the mistake of thinking that Internal Revenue Service would let them take the money back from James G. Schmidt and record it by a credit to purchases in a different year from that in which purchases were debited with an overstated amount." In his reply brief petitioner states that: In order to carry out the declared dividend recited above, the bookkeeper had to determine where Mr. Schmidt's money was credited. The bookkeeper found that Mr. Schmidt's money had been credited to purchases, and when the purchase account for the year was closed, it was credited to surplus. At this point the bookkeeper made a charge to surplus. This latter charge was not a distribution out of earnings and profits. Later in the same brief the statement is made that "The corporation *73 records show the receipt credited to purchases the same account that was debited for improper withdrawals." It is stipulated that petitioner, who was president of the Paul M. Adams Company, deposited "over a period of years through 1957" checks in his personal accounts drawn by the company to pay vendors in the total amount of $22,454.40; that he was prosecuted for willfully attempting to evade income tax for the years 1954, 1955 and 1956; that "at the time of the criminal indictment" it was determined (presumably by the Internal Revenue Service) that petitioner had diverted $22,454.40 from the corporation for his own personal benefit; that this amount was added to his income (presumably by the Internal Revenue Service) "for the years in question;" that "he paid the proper tax thereon;" that "during the year, 1958, prior to the criminal prosecution, [petitioner] reimbursed the corporation $22,454.40;" that on March 2, 1961, the corporation "adopted a resolution to give a dividend to [petitioner] in the amount of $22,454.00;" that this resolution recites that this dividend was in recognition of "the outstanding services of [petitioner] to the * * * Company;" that the resolution *74 further recites that the dividend was "a charge against surplus in accordance with the findings of the Internal Revenue Service," was "specifically designated as having been paid in those years as determined by the Internal Revenue Service" and had as its purpose the acceptance and satisfaction of "all actions with respect to those years;" that this dividend declaration was reflected on the books of the company by debiting surplus $22,450.00 and crediting the same amount to the "Loan Account" of petitioner on April 28, 1961; that "as of March 2, 1961," this loan account showed that petitioner "personally owed the corporation $9,010.73;" that after the sum of $22,450.00 was credited to this loan account it showed a balance of $13,439.27 ($22,450.00 - $9,010.73) due petitioner from the company, and that this balance was paid by two checks issued to petitioner in June and November 1961. Other than as set out above there are no facts stipulated with regard to any findings or determinations by the Internal Revenue Service as to petitioner or the Paul M. Adams Company and no facts as to any bookkeeping entries of the company connected with any of its transactions with petitioner during *75 the period of 1954 through 1961. The principal contention of petitioner appears to be that the distribution made by the company to petitioner in 1961 was not a dividend regardless of the language of the declaration and the entries in the books of the company since in reality it was not a distribution out of the earnings of the company but was a repayment to petitioner of his own funds and therefore should be considered as "a retransfer of funds" "that came not from earnings" and therefore "was not a distribution out of earnings." There are no facts in the record before us that would even suggest that the total of the funds fraudulently taken by petitioner from the company in 1954, 1955 and 1956 and reimbursed to the company during 1958 was kept by it in a segregated account rather than commingled with its other funds, that the company had no earnings and made no increases in its surplus account between 1958 and March 2, 1961, or that the company did not have available on March 2, 1961, accumulated earnings and profits over and above any amounts repaid by petitioner in 1958 out of which the 1961 distribution to petitioner could have been made. On the record before us, we must conclude *76 that there is no factual basis to this argument of petitioner. Another contention of petitioner is to the effect that the March 2, 1961, resolution of the company's board of directors was merely intended to convert petitioner's fraudulent withdrawals of 1954, 1955 and 1956 into dividends as of the times when the withdrawals were made and was not intended to be a declaration of a dividend in 1961. A fair outline of this argument may be made by quotations from petitioner's reply brief as follows: * * * Directors said pre 1958 withdrawals were a dividend not 1961 bookkeeping adjustments. * * *
The Board of Directors of a corporation have a right to designate that portion of capital to be returned to stockholders and The Board of Directors of The Paul M. Adams Company did not in 1961 declare a dividend to James G. Schmidt out of earnings and profits at that date. There are two declarations in Ex. 1 March 2, 1961. The first declaration is $7,210.00 and since it does not name the source of the distribution, it falls under the definition of Section 316. The second declaration is a ratification of the findings of Internal Revenue Service. The charge to surplus in 1961 was not *77 the dividend declared by the Directors. The 1961 charge to surplus was dictated by the rules of bookkeeping in order to carry out the Declaration of Dividend which said "Said dividend being a charge against surplus of the Corporation in accordance with the findings of the Internal Revenue Service and is specifically designated as having been paid in those years as determined by the Internal Revenue Service." It is obvious from these words that the Directors are not making a 1961 declaration of a dividend to James G. Schmidt. Just as an offeror is king of his offer the Directors are [kings] of their declarations and a finding of a 1961 dividend is manifestly inconsistent with the action of the Directors of The Paul M. Adams Company. The only 1961 dividend of The Paul M. Adams Company was in cash in the amount of $7,210.00. With regard to this contention we again point out that the stipulation does not disclose what "the findings of the Internal Revenue Service" were or what was the determination of the Internal Revenue Service other than "that petitioner had diverted $22,454.40 from the corporation for his own personal benefit" and that "this amount was added to his income for the *78 years in question," those years apparently being 1954, 1955 and 1956. Specifically there is no stipulation to the effect that the Internal Revenue Service determined that the company had paid a dividend to petitioner "in those years." The recitations contained in the resolution to the effect that there were "findings of the Internal Revenue Service" and that the dividend declared was "a charge against surplus * * * in accordance with [such] findings" do not constitute proof of the existence or contents of "such findings." There is implicit in petitioner's argument a proposition, not supported by authorities, that the dividend declared on March 2, 1961, which was paid and charged against surplus later in that year was a dividend paid and taxable to petitioner in prior years because the resolution declaring the dividend "specifically designated [it] as having been paid in those years * * *." We know of no rule of law which gives the power to the board of directors of a corporation to transform by its own "ipse dixit" a dividend declared and paid in 1961 into dividends paid and taxable to the recipient of the dividend in 1954, 1955 and 1956. (See Mertens, Law of Federal Income Taxation *79 (rev. ed. 1962), sec. 9.10.) Contrasted with the ambiguous language in the passage of the 1961 resolution relied upon by petitioner is the straight-forward statement therein "that the outstanding services of James G. Schmidt to the Paul M. Adams Company be recognized by the declaration in the amount of $22,454.00." Following the adoption of this resolution payments were made to petitioner by the company totalling $22,454.00 and debit was made on the company's books to its surplus in the same amount. The stipulated facts relating to the pre-1961 transactions may constitute evidence as to the reason for the declaration of the dividend in 1961 but they do not, in our opinion, constitute evidence which would support a conclusion that the distributions received by him in that year were not taxable to him as a dividend in that year. On the record before us we must conclude that these payments constituted a dividend received by petitioner and taxable to him in 1961 as determined by respondent. Throughout his briefs petitioner stresses the inequity of respondent's determination in this case. We do have the disturbing and unpleasant feeling that the over-all tax consequences to petitioner *80 have been more onerous than they might have been. However, these tax consequences may well have been caused by petitioner's own acts or failure to act. For example, there is no explanation as to why petitioner did not take a deduction on account of the repayment of the funds obtained by fraud under Section 165(c)(2), I.R.C. 1954 (see Rev. Rul. 65-254, Cum. Bul. 1965-2, p. 50). Even though these tax consequences to petitioner may be onerous and therefore susceptible to being characterized by petitioner's counsel as inequitable we are compelled to the result reached by us in this case by reason of the following: (1) this tribunal has no equitable jurisdiction, (2) federal income taxes are levied on an annual basis and (3) on the record before us petitioner has failed to prove that he did not receive a taxable dividend of $22,454.00 in 1961 as determined by respondent. Petitioner has made no argument to the effect that he is entitled to relief under any section of the Internal Revenue Code providing for corrections of errors such as Sections 1311 and 1312. Petitioner's sole contention in this case is that he did not receive a taxable dividend in 1961, *81 a contention which he has failed to prove. Decision will be entered for the respondent. Footnotes
1. This is not accurate since a part of this deficiency resulted from respondent's adjustments with regard to a "taxable dividend of $480.00 * * * representing the value of personal use of a company automobile" which is not here in issue.↩